IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**BRANDY R. ANDLER,**

        **Plaintiff,**

   **vs.**                                **Civil Action 2:06-CV-265**
                                                            **Magistrate Judge King**

**CLEAR CHANNEL BROADCASTING,
INC.,** *et al.***,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on defendant's motion *in limine* to exclude the testimony of plaintiff's damages expert, Daniel Selby. *Defendant Clear Channel Broadcasting, Inc.'s Motion in Limine No. 2*, Doc. No. 108 ("*Defendant's Motion*"). For the reasons that follow, *Defendant's Motion* is **GRANTED**.

**I.   BACKGROUND**

On July 13, 2004, plaintiff visited a campground ("Campground B") that was owned, operated and maintained by defendant Clear Channel Broadcasting ("defendant") and where a yearly music festival took place. *Complaint*, Doc. No. 2, at ¶ 3; *Entry*, Doc. No. 15; *Motion in Limine*, p. 1. While visiting Campground B, plaintiff stepped into a hole in the ground and fell ("the accident"). *Complaint*, at ¶ 3. Plaintiff broke bones in her feet and suffered other injuries as a result of her fall. *Id.* at ¶¶ 5-7.

A jury trial is scheduled to begin in this matter on November 16, 2009.[1] *Order*, Doc. No. 106. Plaintiff intends to offer Mr. Selby's

---

[1]A jury trial was previously held in this case on June 9, 2008, through June 12, 2008. Doc. Nos. 90, 91, 92, 93. A jury verdict was returned in plaintiff's favor and defendant appealed. Doc. Nos. 74, 75, 76, 83. The

videotaped testimony, Doc. No. 58, during trial.  Doc. No. 114.

Mr. Selby, a certified public accountant who devotes most of his professional time to "economic and financial analysis relative to economic damages in civil litigation," *Tr. Trans*., Vol II, p. 64, Doc. No. 91,[2] testified that, although plaintiff did not experience a loss of income, she did suffer a loss of earning capacity:[3]

> While she's currently earning approximately the
> same amount, over the long run she's going to
> have disruptions as I understand the medical
> testimony to be that there's going to be a work
> disability involved, which means that she will
> have a likelihood of having less of a frequency
> in participation in the labor force.  She may
> experience unemployment frequencies more and she
> may have more of a probability of exiting the
> labor force.

*Id*., p. 69.  He based this opinion, in part, on the assumption that there would be medical testimony "that there is at play a work disability or there's a diminished ability to operate at the former level.  She'll have continued impairments that I think – I understand would be explained as being permanent in nature." *Id*., p. 70.  Mr. Selby assumed that plaintiff's permanent impairment, or diminished work capacity, was of average severity.  *Id*., pp. 74 - 75.  Relying on vocational statistics generated by the United States Bureau of Labor

---

United States Court of Appeals for the Sixth Circuit subsequently reversed and remanded this matter for a new trial.  Doc. Nos. 96, 101.

[2]In its briefing of *Defendant's Motion*, defendant cites to the trial transcript, while plaintiff refers to depositions previously filed in this case.  Because both witnesses testified at trial by deposition, their testimony is identical regardless of the citation.  For ease of reference, the Court will refer to the trial transcript when discussing the relevant testimony.

[3]Mr. Selby testified that plaintiff's actual earnings were "fairly comparable . . . pre and post injury." *Tr. Trans*., Vol. II, p. 68, Doc. No. 91.

Statistics, *id*., p. 73, Mr. Selby opined that plaintiff had suffered a net loss of pre-injury earning capacity totaling $232,346.00. *Id*., p. 74. He reached that conclusion by considering – not plaintiff's actual earnings history – but "the average compensation for persons in a full-time position at that wage classification." *Id.*, p. 88. Finally, Mr. Selby testified that his opinion was reached with "a reasonable degree of accounting and economic certainty. . . ." *Id.*, p. 74.

Defendant moves to exclude Mr. Selby's testimony on two grounds.[4] First, defendant argues that Mr. Selby improperly based his opinion of plaintiff's lost earning capacity on his own unfounded conclusion that plaintiff is permanently disabled. *Defendant's Motion*, pp. 3-5. Second, defendant contends that the methodology used by Mr. Selby to determine loss of earning capacity is unreliable and flawed because, *inter alia*, he used speculative interest rates and failed to rely on actual data, *i.e.*, plaintiff's actual pre-injury earnings. *Id*. at 5-8.

In response, plaintiff argues that Mr. Selby's testimony was not based on his own opinion that plaintiff is permanently disabled but, rather, was based on the opinion of plaintiff's treating physician and medical expert, Dane K. Wukich, M.D., who testified that plaintiff has suffered a permanent impairment in her ability to stand.[5] *Memorandum Contra to the Defendant Clear Channel Broadcasting, Inc.'s Motion in*

---

[4]Defendant's motion to exclude Mr. Selby's testimony prior to the first trial was denied as untimely. *Tr. Trans*., Vol. II, p. 3, Doc. No. 91.

[5]The videotaped deposition of Dr. Wukich was taken on June 4, 2008. Doc. No. 59-1. Plaintiff intends to present this videotaped testimony at trial. Doc. No. 114.

3

*Limine Number 2*, Doc. No. 111, pp. 1-2 ("*Memo. Contra*"). Plaintiff also contends that no expert can testify about loss of earning capacity "[i]f you accept the [defendant's] concept that an expert cannot rely on statistics[.]" *Id*. at 2. Plaintiff further argues that defendant has not offered an expert to rebut Mr. Selby's methodology and that defendant is free to argue to the jury any perceived weaknesses in Mr. Selby's testimony. *Id*. at 3-5.

**II. STANDARD**

"Motions *in limine* are generally used to ensure evenhanded and expeditious management of trials by eliminating evidence that is clearly inadmissible for any purpose." *Ind. Ins. Co. v. Gen'l Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Whether or not to grant a motion *in limine* falls within the sound discretion of the Court. *See*, *e.g.*, *United States v. Hurd*, No. 92-5988, 1993 U.S. App. LEXIS 25718, at *9 (6th Cir. Oct. 1, 1993); *Goldman v. Healthcare Mgmt. Sys.*, 628 F. Supp. 2d 748, 751 (W.D. Mich. 2008).

In addition, "the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence[.]" *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962); Fed. R. Evid. 702. The Court must act as a gatekeeper and exclude unreliable expert testimony. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (stating that the gatekeeper function applies to all expert testimony). Federal Rule of Evidence 702 governs the use of expert testimony:

> If scientific, technical, or other specialized knowledge
> will assist the trier of fact to understand the evidence or
> to determine a fact in issue, a witness qualified as an
> expert by knowledge, skill, experience, training, or
> education, may testify thereto in the form of an opinion or
> otherwise, if (1) the testimony is based upon sufficient
> facts or data, (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Under Rule 702, a proposed expert's testimony is admissible if it satisfies three requirements. *In re: Scrap Metal Antitrust Litigation*, 527 F.3d 517, 528-29 (6th Cir. 2008). First, the proposed expert "must be qualified by 'knowledge, skill, experience, training or education.'" *Id*. at 529 (quoting Fed. R. Evid. 702). Second, the proposed testimony "must be relevant, meaning that it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id*. (quoting Fed. R. Evid. 702). Finally, the testimony must be reliable. *Id*. In assessing whether testimony is reliable, the Court must determine whether it is based on "sufficient facts or data." *Id*.; Fed. R. Evid. 702. "An expert's opinion must be supported by 'more than subjective belief and unsupported speculation' and should be supported by 'good grounds,' based on what is known." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000) (quoting *Pomella v. Regency Coach Lines, Ltd.*, 899 F. Supp. 335, 342 (E.D. Mich. 1995)). "Where an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony, but where the opinion has a reasonable factual basis, it should not be excluded." *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993). However, "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than

on its admissibility." *Id*.

In determining whether an expert's methodology is reliable, a court considers several factors, including "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *In re: Scrap Metal Antitrust Litigation*, 527 F.3d at 529 (quoting *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94) (internal quotation marks omitted)).

## III. DISCUSSION

### A. Evidence of Medical Impairment

Mr. Selby testified that his opinion as to plaintiff's loss of earning capacity was based on the assumption that plaintiff has a work disability or impairment, which he defined as "a diminished ability to operate at the former level." *Tr. Trans.*, Vol. II, p. 70, Doc. No. 91. A fair reading of his testimony makes clear that Mr. Selby did not base his opinion on an assumption that plaintiff is permanently disabled from all employment.

Dr. Wukich, who treated plaintiff's injuries over the course of several years, testified that plaintiff's diagnosed arthritis of the feet is permanent, *Tr. Trans.*, Vol. II, pp. 172 - 73, Doc. No. 91, and impairs her ability to stand "more than a couple hours." *Id*., p. 167. Moreover, Dr. Wukich testified, arthritis "usually is slowly but progressive in nature, especially in a weight-bearing joint." *Id*., p. 175. As such, plaintiff's condition is likely to result in future increased pain, *id*., and surgical fusion of the fractured bones in

plaintiff's feet is "probable." *Id.* p. 176.

This Court concludes that the testimony and opinions of Dr. Wukich provide "sufficient facts" and "good grounds" for Mr. Selby's assumption that plaintiff has suffered a permanent impairment, or reduction, in her ability to work. *See* Fed. R. Evid. 702, *McLean*, 224 F.3d at 800-01.

**B.  Methodology**

Defendant also challenges the methodology utilized by Mr. Selby in assessing plaintiff's earning capacity, characterizing that methodology as based entirely on speculation. "Where lost future earnings are at issue, an expert's testimony should be excluded as speculative if it is based on unrealistic assumptions regarding the plaintiff's future employment prospects." *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citing *Gumbs v. Int'l Harvester, Inc.*, 718 F.2d 88, 98 (3d Cir. 1983)). Although the trial court enjoys broad discretion in determining whether to permit expert testimony, *Salem*, 370 U.S. at 35, "[a]dmission of expert testimony based on speculative assumptions is an abuse of discretion." *Boucher*, 73 F.3d at 22 (concluding that the trial court abused its discretion in permitting an expert to testify regarding the plaintiff's past and future lost earnings capacity based on the unrealistic and speculative assumption that plaintiff, who previously maintained a sporadic employment history, would have been employed on a permanent, full-time basis had he not been injured).

Prior to the accident, plaintiff earned $9,838 in 2002 and $9,435 in 2003 as a part-time child care worker. *Tr. Trans.*, Vol. II, pp. 91, 97, Doc. No. 91. After the accident, she obtained a cosmetology

7

license and began working as a manicurist and pedicurist; in 2006, she earned approximately $10,019. *Id.*, pp. 90, 100. Mr. Selby ignored evidence of plaintiff's actual earnings and instead relied on average national figures even though he acknowledged that plaintiff "wasn't exercising the average." *Id*. Pp. 88-89, 91, 97, 99. For example, Mr. Selby assumed that plaintiff had the capacity to earn approximately $17,000 per year as a full-time childcare worker prior to the accident and the capacity to earn approximately $17,000 per year as a full-time manicurist and pedicurist. *Id*. at 88, 90, 97. However, there is no evidence that plaintiff worked full-time prior to her accident. Although Mr. Selby's "averages" are not quite double plaintiff's actual numbers, the numbers used in his calculations are several thousand dollars higher than the numbers reflected by the historical data.

While the Sixth Circuit does not completely reject the use of average figures, use of such figures is improper when they are based on unreasonable assumptions. *See*, *e.g.*, *Cappello v. Duncan Aircraft Sales of Florida, Inc.*, 79 F.3d 1465, 1476 (6th Cir. 1996). Here, even Mr. Selby admits that plaintiff's "actual earnings didn't match what the capacity determinations were." *Tr. Trans.*, Vol. II, pp. 97-98, Doc. No. 91. There is no evidence in the record to support such a large discrepancy. *See Boucher*, 73 F.3d at 22. Without such evidence, Mr. Selby's opinion as to the present value of plaintiff's lost earning capacity amounts to nothing more than unreasonable speculation. This defect in the methodology utilized by Mr. Selby goes to the admissibility of his testimony, rather than to its weight, as plaintiff argues. Accordingly, the Court concludes that Mr. Selby's

8

testimony must be excluded.

**WHEREUPON**, *Defendant Clear Channel Broadcasting, Inc.'s Motion in Limine No. 2*, Doc. No. 108, is **GRANTED**. The testimony of plaintiff's damages expert, Daniel Selby, is excluded.

November 15, 2009                    *s/ Norah McCann King*
                                     Norah McCann King
                                     United States Magistrate Judge